UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Civil Case No.

ISABELLE J. EUGENE,

    Plaintiff,

vs.

WALT DISNEY PARKS AND
RESORTS U.S., INC.,
a Florida corporation,

    Defendant.
_____/

**Jury Trial Demanded**

## COMPLAINT

1. This action seeks relief for employment discrimination in the form of retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Florida Civil Rights Act of 1992, as amended ("FCRA"), Fla. Stat. § 760.01 *et seq.*

### Parties

2. The plaintiff, Isabelle J. Eugene ("Eugene"), is and at all times relevant to this Complaint was an adult resident of Florida.

3. The defendant, Walt Disney Parks and Resorts, U.S., Inc. ("Disney") is a corporation organized and doing business pursuant to the laws of the State of Florida with a principal place of business in Lake Buena Vista, Florida.

4. At all times relevant to this Complaint, Disney had 15 or more employees on each working day in each of 20 or more calendar weeks.

### Jurisdiction and Venue

5. This action arises under federal law. This court has jurisdiction of this action pursuant to 42 U.S.C. § 2000e–5(f)(3) and 28 U.S.C. § 1331.

6. The claims asserted in this action arose within this district and the alleged statutory violation occurred in this district. Venue of this action is proper pursuant to 42 U.S.C. § 2000e–5(f)(3) and 28 U.S.C. § 1391.

## Procedural Requirements

7. Eugene filed a timely Charge of Discrimination with the Equal Employment Opportunities Commission ("EEOC") on or about April 29, 2019 alleging sex discrimination/retaliation by Disney. The Charge of Discrimination was cross-filed with the Florida Commission on Human Relations ("FCHR"). The Charge of Discrimination alleged facts giving rise to the same claims brought in this action. The EEOC assigned charge number 511-2019-00867 to Eugene's administrative proceeding.

8. The EEOC issued and mailed a Notice of Right to Sue letter with regard to Eugene's Charges of Discrimination on or about November 12, 2019. A copy of the Notice is attached as Exhibit A.

9. Eugene commenced this action within 90 days of the EEOC's issuance and mailing of its Notice of Right to Sue.

10. All other conditions precedent to the filing of this action have been performed or waived.

## General Allegations

11. Eugene began employment by Disney on or about May 21, 2018.

12. Disney hired Eugene for the position of Cook 2 and assigned her to prepare food at the Hollywood Brown Derby, a restaurant inside Disney's Hollywood Studios, a Disney-owned theme park in Orlando, Florida.

13. Eugene's initial job duties included the preparation of food to be served at Woody's Lunch Box ("Woody's"), a quick service dining establishment inside

Disney's Hollywood Studios, and to assist in the delivery of the prepared food to Woody's.

14. At an early stage of her employment, a supervising chef known to her as Chef Craig instructed her to place both hands on the lid of a blender while he turned it on. Chef Craig then said to Eugene, "Probably never felt something so powerful before", an obvious sexual reference given that Eugene had attended culinary school and was familiar with industrial blenders. Chef Craig then placed both of his hands on top of Eugene's and said, "Wow, most girls would claim sexual harassment over something like this," confirming the sexual intent of his touching and of his reference to Eugene feeling something "powerful."

15. On or about the following day, Chef Craig introduced another cook to Eugene as "Tinkerbell" and explained that he called her Tinkerbell because she gave him "a little sparkle."

16. On other occasions, Chef Craig made sexual jokes in Eugene's presence, including a crude reference to roasting walnuts as "hot nuts" and jokingly saying he had to get his "hot nuts" from behind Eugene.

17. On or about July 14, 2018, during the course of her training, a Cook 1 attempted to demonstrate how to stir a large batch of pasta salad with an oar while her supervisor, Chef Craig, added salt.

18. Chef Craig motioned to Eugene as if he wanted to correct her technique for using the oar. When Eugene attempted to pass the oar to Chef Craig, he declined to take it and instead held Eugene and guided her shoulders and arms, groping Eugene while making unnecessary bodily contact with her.

19. Eugene was visibly disturbed by the nature of the inappropriate and unnecessary body contact she received from Chef Craig, prompting Chef Craig to say, "Don't worry sweetheart, I'm not going to sexually assault you."

20. Chef Craig told Eugene to finish the pasta and told her he would taste it later. When Eugene later sought out Chef Craig to determine whether he had tasted the pasta, he told her that he did not remember and added, "But that was fun, right?"

21. Eugene spoke to a pastry chef who had witnessed some of her interaction with Chef Craig. The pastry chef encouraged Eugene to report her concerns about Chef Craig's inappropriate touching and remarks to Disney's Employee Relations department and advised Eugene that she had experienced verbal harassment from Chef Craig.

22. On or about July 17, 2018, the pastry chef advised Eugene that she had spoken to Chef Robert, the Culinary Director at Hollywood Studios, about Chef Craig and encouraged Eugene to do the same. When Eugene saw the Culinary Director that same day, Eugene asked the Culinary Director if she should report incidents of sexual harassment and if an employee could get in trouble for making a report of sexual harassment.

23. The Culinary Director told Eugene that he could not advise her but later, in the presence of others, interviewed Eugene about her own complaint and about her knowledge of Chef Craig's inappropriate interaction with the pastry chef. At that point, Eugene complained to the Culinary Director about Chef Craig's sexual harassment of her, including his inappropriate physical contact and remarks, and expressed her sincere belief that the conduct was unlawful.

24. Upon information and belief, the Culinary Director forwarded Eugene's complaint to Employee Relations personnel who substantiated the validity of Eugene's complaint. Employee Relations later advised Eugene that she would not be working under the supervision of Chef Craig again.

25. It was widely known among chefs and other supervisors that Eugene made a complaint of sexual harassment against Chef Craig and that her complaint contributed to Disney's decision to transfer Craig.

26. The day after Eugene learned that she would not be working under Chef Craig's supervision, a chef complained that Eugene was not putting stickers on mayo. That complaint was false and was unsupported by any facts that would have caused a reasonable person to believe it was true.

27. The chef forwarded the false complaint to Eugene's supervising chef, who confronted Eugene. The supervising chef made a false and unsupported accusation that Eugene was taking drugs. The supervising chef also criticized Eugene for not wearing a cut glove when he asked her to stop working on the slicer to discuss the complaint. Eugene showed her supervising chef that she was still wearing a cut glove and advised him that the complaint about the mayo was false. Eugene then informed the union representative that she was being subjected to retaliation.

28. Upon information and belief, the union representative took Eugene's retaliation complaint to the Culinary Director, who denied that any retaliation had occurred without conducting a meaningful investigation. The Culinary Director then transferred Eugene to work as a cook at Woody's.

29. When Eugene subsequently attempted to report a work injury at Woody's, a manager advised her not to get medical treatment and delayed the

reporting process. The manager also told Eugene that Eugene always thought people were out to get her, an obvious reference to the sexual harassment complaint she made.

30. Shortly after the work injury occurred, Eugene was falsely accused of engaging in an unsafe workplace procedure when, in fact, she had followed the example set by her trainer. Although she was told that her "coaching/counseling" session for that incident was not discipline of any kind, Disney used the incident and the "coaching/counseling" session as a pretext for terminating Eugene's employment.

31. Prior to her complaint of sexual harassment, Eugene's supervisors were satisfied with, and complimented Eugene on, her work performance. Subsequent to her complaint of sexual harassment, the attitude of her supervisors toward Eugene became hostile and she began to receive negative evaluations of her work performance. Her performance did not change; only the attitudes of supervisors changed.

32. Disney supervisors caused scheduling errors that triggered attendance-related complaints related to Eugene. Prior to her report of sexual harassment, those errors were corrected and the complaints were withdrawn. After her report of sexual harassment, the errors were not corrected and unwarranted attendance-related complaints were not withdrawn. Disney supervisors also falsified Eugene's record of time worked. Disney then relied on attendance-related complaints and falsified records as a pretext to terminate Eugene's employment.

33. After Eugene made her complaint of sexual harassment and after her transfer to Woody's, Disney delayed or stopped implementing necessary training

that Eugene required to learn her new job and then used her failure to complete training as a pretext to terminate her employment.

33. Based on input from the supervisors and other employees who were taking the adverse actions described above against Eugene, Disney terminated Eugene's employment effective August 28, 2018. The input that Disney received was tainted by a desire to retaliate against Eugene because she complained about sexual harassment.

**First Claim**
**Sexual Harassment in Violation of Title VII (42 U.S.C. § 2000e-2(a))**

35. Eugene realleges and incorporates the allegations made in paragraphs 1 to 34 of this Complaint.

36. Eugene was subjected to severe and pervasive harassment at her workplace that created an offensive, oppressive, abusive, intimidating, and hostile work environment because of her sex.

37. Eugene was subjected to severe and pervasive harassment at her workplace that created an offensive, oppressive, abusive, intimidating, and hostile work environment by her male supervisor, while similarly employed male employees not subject to the same harassment.

38. Eugene was subjected to severe and pervasive harassment at her workplace that created an offensive, oppressive, abusive, intimidating, and hostile work environment because she did not tolerate her male supervisor's advances.

39. The sexual harassment Eugene experienced was so severe and pervasive that it unreasonably interfered with her work performance.

40. Disney was aware that Eugene was being victimized by sexual harassment and that the sexual harassment was creating a hostile work environment, but took no effective action to correct the problem.

41. Disney's participation in and tolerance of sexual harassment of Eugene was an unlawful employment practice that violated 42 U.S.C. § 2000e-2(a).

42. The sexual harassment of Eugene by Disney was intentional, outrageous, and malicious.

43. As a direct, substantial, and proximate result of Disney's sexual harassment, Eugene suffered and will continue to suffer lost wages and benefits and has suffered and will continue to suffer emotional distress, mental anguish, humiliation, anxiety, loss of dignity, and loss of enjoyment of life.

## Second Claim
## Sexual Harassment in violation of FCRA (Fla. Stat. § 760.10(1)(a))

44. Eugene realleges and incorporates the allegations made in paragraphs 1 to 34 of this Complaint.

45. Eugene was subjected to severe and pervasive harassment at her workplace that created an offensive, oppressive, abusive, intimidating, and hostile work environment because of her sex.

46. Eugene was subjected to severe and pervasive harassment at her workplace that created an offensive, oppressive, abusive, intimidating, and hostile work environment by her male supervisor, while similarly employed male employees not subject to the same harassment.

47. Eugene was subjected to severe and pervasive harassment at her workplace that created an offensive, oppressive, abusive, intimidating, and hostile work environment because she did not tolerate her male supervisor's advances.

48. The sexual harassment Eugene experienced was so severe and pervasive that it unreasonably interfered with her work performance.

49. Disney was aware that Eugene was being victimized by sexual harassment and that the sexual harassment was creating a hostile work environment, but took no effective action to correct the problem.

50. Disney's participation in and tolerance of sexual harassment of Eugene was an unlawful employment practice that violated Fla. Stat. § 760.10(1)(a).

51. The sexual harassment of Eugene by Disney was intentional, outrageous, and malicious.

52. As a direct, substantial, and proximate result of Disney's sexual harassment, Eugene suffered and will continue to suffer lost wages and benefits and has suffered and will continue to suffer emotional distress, mental anguish, humiliation, anxiety, loss of dignity, and loss of enjoyment of life.

### Third Claim
### Retaliation in Violation of Title VII (42 U.S.C. § 2000e-3(a))

53. Eugene realleges and incorporates the allegations made in paragraphs 1 to 34 of this Complaint.

54. Eugene engaged in activity protected by the Title VII by opposing unlawful discrimination when she complained to Disney about sexual harassment in her workplace.

55. Eugene made her complaint in the good-faith belief that the harassment she experienced constituted unlawful sex discrimination.

56. Disney discriminated against Eugene in violation of 29 U.S.C. § 2000e-3(a) by taking adverse actions against her — including but not limited to the termination of her employment and the other adverse actions described in this Complaint — because she engaged in the protected activity described above.

57. Disney's retaliation against Eugene because she engaged in protected activity was intentional, outrageous, and malicious.

58. As a direct, substantial, and proximate result of Disney's retaliation, Eugene suffered and will continue to suffer lost wages and benefits and has suffered and will continue to suffer emotional distress, mental anguish, humiliation, anxiety, loss of dignity, and loss of enjoyment of life.

**Fourth Claim**
**Retaliation in Violation of FCRA (Fla. Stat. § 760.10(7))**

59. Eugene realleges and incorporates the allegations made in paragraphs 1 to 34 of this Complaint.

60. Eugene engaged in activity protected by the FCRA by opposing unlawful discrimination when she complained to Disney about sexual harassment in her workplace.

61. Eugene made her complaint in the good-faith belief that the harassment she experienced constituted unlawful sex discrimination.

62. Disney discriminated against Eugene in violation of Fla. Stat. § 760.10(7) by taking adverse actions against her — including but not limited to the termination of her employment and the other adverse actions described in this Complaint — because she engaged in the protected activity described above.

63. Disney's retaliation against Eugene because she engaged in protected activity was intentional, outrageous, and malicious.

64. As a direct, substantial, and proximate result of Disney's retaliation, Eugene suffered and will continue to suffer lost wages and benefits and has suffered and will continue to suffer emotional distress, mental anguish, humiliation, anxiety, loss of dignity, and loss of enjoyment of life.

## Relief Requested

WHEREFORE, Plaintiff Isabelle J. Eugene requests the entry of judgment against Defendant Walt Disney Parks and Resorts, U.S., Inc. as follows:

a. For an award of lost wages and benefits in an amount to be determined at trial;

b. For an award of compensatory damages in an amount to be determined at trial;

c. For an award of punitive damages in an amount to be determined at trial;

d. For reinstatement or an award of future wage and benefits loss and such other equitable or injunctive relief as the court deems just;

e. For an award of actual costs and a reasonable attorney's fee as authorized by 29 U.S.C. § 2000e-5(k) and Fla. Stat. § 760.11(5); and

f. For such other and further relief as is just and necessary.

## Jury Demand

Plaintiff demands a trial by jury.

Dated: February 10, 2020                    Respectfully submitted,


By: *s/Robert S. Norell, Esq.*
Robert S. Norell, Esquire
Florida Bar No. 996777
E-Mail: rob@floridawagelaw.com
**ROBERT S. NORELL, P.A.**
300 N.W. 70th Avenue
Suite 305
Plantation, Florida 33317
Telephone: (954) 617-6017
Facsimile: (954) 617-6018
*Counsel for Plaintiff*